**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Olden Brooker,<br><br>                              Plaintiff,<br><br>v.<br><br>INVISTA S.à.r.l. LLC,<br><br>                              Defendant. | **COMPLAINT**<br>(**Jury Trial Demanded**) |

The Plaintiff, by and through his undersigned counsel, complaining of the Defendants herein, alleges as follows:

1.      The plaintiff, Olden Brooker, (hereinafter "Plaintiff") is a citizen and resident of Richland County, South Carolina, and he was employed by Defendant as the Research and Development ("R&D") Technical Laboratory Supervisor until August 2015.

2.      The defendant, INVISTA S.à.r.l. LLC (hereinafter "INVISTA" or "Defendant") is a privately held company with operations in various states, including a plant operated by INVISTA in Lugoff, South Carolina.

3.      This action arises under Title VII of the Civil Rights act 42 U.S.C. 2000(e) et seq. and amendments thereto ("Title VII"), the Age Discrimination in Employment Act of 1967 and amendments thereto ("ADEA"), and the laws of the State of South Carolina.

4.      Jurisdiction exists pursuant to 28 U.S.C. § 1343(a) which gives the District Court original jurisdiction over any civil action authorized by law to be commenced by any person to recover damages under any Act of Congress providing for protection of civil rights.

1

5.     Venue lies within the Columbia Division of the District of South Carolina pursuant to 28 U.S.C. § 1391 (b) because the Defendant owns and operates business in this judicial district and most of the events giving rise to this action occurred within the Columbia Division.

6.     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC Charge No. 436-2015-01227) and received his right to sue notice and this action is timely filed within the requisite time period.

7.     Plaintiff demands a trial by jury on all claims brought herein.

## FACTUAL ALLEGATIONS

8.     The Plaintiff is an African-American male and sixty-six years old. Plaintiff was employed by the DuPont and INVISTA companies for over 41 years until his termination, and he most recently served as the R&D Technical Laboratory Supervisor at INVISTA's Camden plant location in Lugoff, South Carolina. Plaintiff successfully performed his job duties during his lengthy tenure of employment and he received successful performance reviews.

9.     As R&D Tech Lab Supervisor, the Plaintiff was responsible for the Tech Lab staffing, operations maintenance and management of his area of the facility. Plaintiff oversaw approximately nine employees, including eight manufacturing operators and one Technical Assistant Specialist. Their team's primary goal was to work with the research scientists and engineers to develop new products for the INVISTA flooring business.

10.     Plaintiff began reporting to Glenn Fielitz (white male, early 50s) in April 2015.

11.     In June 2015, the Plaintiff needed to fill a TA Specialist position in the Tech Lab. Six people were on the selection team for this position, including Mr. Fielitz. The size of the selection team was unusually large due to instructions from Mr. Fielitz and Bill Bender, R&D

Director (white male), to put together a cross-functional selection team. Plaintiff had not previously received such instructions from his managers regarding staffing. After the team had been selected, Mr. Fielitz instructed Plaintiff to add an additional team member who is a white male.

12.     Four applicants applied for the TA Specialist position, including two African-American males, an African-American female and a white male. Five of the six selection team members rated Heather Peterson (the African-American female candidate) highest, and Mr. Fielitz rated Matthew Strickland (the white male candidate) highest. Ms. Peterson was already employed and worked in the Tech Lab for four years alongside the incumbent TA Specialist and she had gained a large amount of knowledge and experience with all of the Tech Lab equipment and processes. She had received tutelage from the R&D Scientists running the tests in the Tech Lab over the years. Mr. Strickland, also an employee, had much less experience and knowledge of the R&D Tech Lab processes and systems.

13.     The Plaintiff was charged with making the final decision for hiring the TA Specialist. Mr. Fielitz instructed the Plaintiff to hold off on making a decision and to think about it longer. For approximately two weeks, Mr. Fielitz tried to convince Plaintiff to hire Mr. Strickland as the TA Specialist instead of Ms. Peterson. However, the Plaintiff selected Ms. Peterson because she was the better qualified candidate for the position, and he conveyed his selection to the hiring recruiter. Based on information and belief, this selection was intentionally held up by Mr. Fielitz.

14.     Later in June 2015, Mr. Fielitz and upper leadership announced a redesign of the Plaintiff's area. Ms. Peterson was to no longer report to the Plaintiff and instead report to Mr. Fielitz and one other TA Specialist would become part of the organization.

3

15.     Around June or July 2015, the Plaintiff was falsely accused of being racially biased in his administration of overtime to subordinates. Plaintiff had conversations with both Glenn Fielitz and a Human Resources person from the Kennesaw, Georgia office. It was apparent that incorrect data was being used to try and make a case against the Plaintiff. Plaintiff refuted the claims of racial bias, which he felt were being made due to his race (African-American). Plaintiff also pointed out that the data being presented was outdated and incorrect—appearing to combine overtime for the Tech Lab area with overtime from the BCF area. Some of the Tech Lab employees were asked by supervisors in another area to work overtime. The overtime for these other areas was included with the overtime for the Tech Lab area in the data being used against Plaintiff, even though the Plaintiff was not responsible for assigning the additional overtime in areas outside his domain.

16.     On July 27, 2015, Plaintiff was advised of mechanical issues with an extruder unit. The maintenance team directed the unit to be shut down and changed out. The following day, on July 28, 2015, an employee admitted to not shutting the extruder unit down on Friday, thus it ran all weekend. Plaintiff immediately informed maintenance, Mr. Fielitz and human resources about the information shared by the employee. Plaintiff advised Mr. Fielitz that he recommended a written corrective action due to the seriousness of the error. Local human resources advised that a Verbal Warning – Note to File was appropriate action since the employee did not have such prior events in her record and it would be consistent with corrective action taken against other employees involved in the same or more serious events.

17.     On or about August 3, 2015, Bill Bender, Kennesaw HR, Camden HR and Mr. Fielitz came on-site to investigate the equipment failure, which was unusual for such an event.

They questioned many of the operators about the event but also asked about all other safety, health and environmental concerns.

18.     On August 4, 2015, Plaintiff was called by Kennesaw HR and instructed to leave the plant pending an investigation.

19.     On August 7, 2015, Plaintiff received a call from Mr. Fielitz, Mr. Bender, and human resources. Mr. Fielitz advised Plaintiff that he was terminated effective August 11, 2015—allegedly based on a series of poor management decisions. In addition to the extruder event and some other event of which Plaintiff had no knowledge, Mr. Fielitz stated that Plaintiff scheduled overtime that was racially biased.

20.     Plaintiff previously was a victim of discrimination. Back in 2014, the Plaintiff raised concerns with Camden HR concerning a decision to not provide an African-American employee a higher rate of pay when he was promoted to a higher level position. Camden HR appeared to be upset that Plaintiff raised the concerns. In January of 2014, Plaintiff also suffered false allegations of racial bias in performance reviews. An investigation was conducted in which the Plaintiff was cleared of any wrongdoing.

**FOR A FIRST CAUSE OF ACTION**
**AGAINST THE DEFENDANT RCRC**
**(Race Discrimination in Violation of Title VII of the Civil Rights Act)**

21.     Where not inconsistent herewith, Plaintiff realleges the foregoing paragraphs.

22.     Plaintiff is an African-American male and thus a member of a protected class.

23.     Plaintiff served as the R&D Tech Lab Supervisor with an excellent record of service until he was terminated for pretextual reasons in August 2015.

24.     Plaintiff was subjected to discriminatory treatment and terminated based upon his race. Plaintiff was falsely accused of racial bias in administering his duties and pressured to

promote lesser qualified individuals by the Defendant. Other similarly situated non African-American employees were not subjected to the same treatment. At the time of his termination, the Plaintiff was again told he administered overtime in a racially biased manner—an allegation raised because of Plaintiff's race and which would not have been raised if Plaintiff was Caucasian. Plaintiff also suffered other discriminatory treatment leading up to his termination, such as other false allegations of racial bias, minority employees being denied raises and other such conduct.

25.    Plaintiff was replaced by someone outside his protected class.

26.    The reasons given for Defendant's conduct, including the termination of Plaintiff, are false and pretextual and are raised to disguise Defendant's discriminatory motives. Plaintiff did not administer his duties in a racially biased manner, did not make a series of poor management decisions and he performed well as a manager and employee. His conduct was appropriate and certainly would not give rise to the termination of an employee of nearly 42 years.

27.    The Defendant's actions amount to unlawful race discrimination in violation of Title VII of the Civil Rights Act of 1964, and amendments thereto.

28.    As a direct and proximate result of the actions of Defendant, Plaintiff was terminated from his employment, suffered a loss of wages, a loss of earning capacity, loss of benefits, loss of retirement as well as reputational loss and mental and emotional suffering. Plaintiff is entitled to an award of actual damages for the willful and intentional acts of Defendant through its agents and employees, prejudgment interest, reasonable attorneys' fees and costs associated with this cause of action, and any other legal and equitable remedies

available under the law. Plaintiff also seeks an award of punitive damages against the Defendants for their willful violations of the law.

### FOR A SECOND CAUSE OF ACTION
### AGAINST THE DEFENDANT RCRC
**(Retaliation in Violation of Title VII of the Civil Rights Act)**

29.    Where not inconsistent herewith, Plaintiff realleges the foregoing paragraphs.

30.    Plaintiff opposed the discriminatory conduct of the Defendant. Plaintiff objected to racial conduct including the denial of a pay increase to a recently promoted African-American employee. Plaintiff's supervisor attempted to force Plaintiff to promote a lesser qualified Caucasian male instead of the better qualified African-American female, however the Plaintiff opposed such conduct. Plaintiff also was falsely accused of racial bias in administering his duties, to which the Plaintiff refuted as such allegations were untrue and themselves discriminatory towards the Plaintiff.

31.    The Plaintiff was targeted and ultimately terminated from employment in retaliation for his protected activity, such as his opposition to and reports of discriminatory conduct and his participation in the so-called "investigation" of racial bias.

32.    Plaintiff has a positive record of employment with Defendant and has maintained excellent performance evaluations during his employment.

33.    The reasons given for Defendant's conduct, including the termination of Plaintiff, are false and pretextual and are raised to disguise Defendant's discriminatory and retaliatory motives. Plaintiff did not administer his duties in a racially biased manner, did not make a series of poor management decisions and he performed well as a manager and employee. His conduct was appropriate and certainly would not give rise to the termination of an employee of nearly 42 years.

34.    Such actions by Defendant to retaliate against the Plaintiff for participating in protected activity amount to unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, and amendments thereto.

35.    As a direct and proximate result of the Defendant's actions, the Plaintiff was terminated from employment, has suffered the loss of wages, a loss of earning capacity, loss of benefits and retirement, as well as intangible damages including emotional distress; and Plaintiff is entitled to an award of actual damages, attorneys' fees and costs, prejudgment interest, and any other legal or equitable remedies available under the law. Plaintiff also seeks an award of punitive damages against the Defendants for their willful violations of the law.

## FOR A THIRD CAUSE OF ACTION
## AGAINST THE DEFENDANT
### (Violation of the ADEA)

36.    Where not inconsistent herewith, Plaintiff realleges the foregoing paragraphs.

37.    The Plaintiff is a sixty-six year old male.

38.    During Plaintiff's employment with Defendant, younger employees were given preferential treatment and not treated as harshly as older employees including the Plaintiff. The Plaintiff was asked about his retirement on several occasions due to his age. Plaintiff was targeted with unfair and false allegations and an investigation and he was ultimately terminated for pretextual reasons.

39.    The reasons for Defendant's treatment of Plaintiff are pretextual and discriminatory.  Such treatment of the Plaintiff is unfair and discriminatory when compared to more favorable treatment by Defendants toward such younger employees in the same or similar circumstances. The Defendant wanted the Plaintiff to leave because of his age, however the Plaintiff continued to work instead of retiring. The Defendant terminated Plaintiff's employment

because of his age in an effort to remove him from employment and promote younger employees.

40.     Such conduct amounts to age discrimination prohibited by the Age Discrimination in Employment Act of 1967, and amendments thereto.

41.     As a direct and proximate result of Defendants' discriminatory acts by its agents in the course and scope of their employment, the Plaintiff has sustained the loss of his job, a loss of earning capacity, loss of benefits and retirement and further has sustained reputational loss, embarrassment, humiliation and emotional distress, all of which will continue into the future. Plaintiff is further entitled to reasonable attorney's fees and costs, prejudgment interest and any other available legal or equitable relief under the law.  Plaintiff also seeks an award of punitive damages against the Defendants for their willful violations of the law.

## FOR A FOURTH CAUSE OF ACTION
## AGAINST THE DEFENDANT
### (Defamation)

42.     Where not inconsistent herewith, Plaintiff realleges the foregoing paragraphs.

43.     The Defendant, by and through its agents and employees, falsely accused the Plaintiff of racial bias in administering his duties and failure to perform his job. Such publications occurred on several occasions in 2015. Such defamatory remarks were published and republished to the Plaintiff's co-workers, subordinates and others from approximately June 2015 until his termination in August 2015 and believed to continue to occur thereafter.

44.     The defamatory actions and words of the Defendant's personnel, acting as agents and servants within the course and scope of their employment as set forth herein, have directly and indirectly promulgated to the public at large the false insinuation that Plaintiff is unfit in his

business or profession. The defamatory publications are especially harmful, as they have tarnished a nearly 42 year career.

45.    Such a portrayal is false, known to be false, made with malicious intent to harm the Plaintiff and in reckless disregard of the truth; and it amounts to defamation *per se*. Further, the above constitutes defamation by actions as well as words and is actionable under the laws of the State of South Carolina; and such defamatory actions and words are outside of or exceed the scope of any alleged privilege or immunity.

46.    That as a direct and proximate result of the aforesaid defamation, Plaintiff has suffered injury to his reputation, emotional distress, and mental anguish and he is entitled to an award of damages, costs and fees, and punitive damages to the extent allowed by law.

WHEREFORE, the Plaintiff prays for judgment against the Defendant for actual and compensatory damages in an amount to be determined by a jury, as well as an award of punitive damages to the extent allowed by law.  The Plaintiff further prays for attorneys' fees and costs associated with this action, as well as prejudgment interest.

Respectfully submitted,

**CROMER BABB PORTER & HICKS, LLC**

BY:   s/Julius W. Babb, IV
        Julius W. Babb, IV (#10500)
        1418 Laurel Street, Suite A
        Post Office Box 11675
        Columbia, South Carolina 29211
        Phone  803-799-9530
        Fax     803-799-9533
        ***Attorneys for Plaintiff***

January 18, 2017
Columbia, SC

10